IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

AIDA RIVERA

**Plaintiff**

v.                                          **CIVIL NO.** 11-1116(JAG)

HFS CORP., et al.,

**Defendants**

---

## OPININON AND ORDER

GARCIA GREGORY, D.J.

Before the Court stands HFS, Corp., Jack Henry, Omayra Garcia, and Viviana Candelario's ("Defendants") motion for summary judgment. Said motion was timely opposed by plaintiff Aida Rivera Rivera ("Rivera"). For the reasons outlined below the motion for summary judgment is hereby **GRANTED IN PART AND DENIED IN PART.**

## BACKGROUND

Rivera filed her complaint on February 1, 2011, alleging that she suffered workplace discrimination and retaliation on account of her gender. Rivera has advanced claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. Rivera has also advanced claims pursuant to Article II of the Puerto Rico Constitution, Act 80 of May 30, 1976, 29 L.P.R.A. § 185a *et seq.*, Act 69 of July 6, 1985, 29 L.P.R.A. §1321 *et.*

Civil Case No. 11-1116 (JAG)                                                2

*seq.*, Act 100 of June 30, 1959, 29 L.P.R.A. § 146 *et. seq.*, and

Articles 1802 and 1803 of the Puerto Rico Civil Code, 31

L.P.R.A. §5141 and § 5142.

The following factual narrative is derived from facts that

are deemed uncontested by the Court because they were included

in the motions for summary judgment and statements of fact, as

well as oppositions, and were agreed upon or properly supported

by the evidence and not genuinely opposed.[1]

Rivera was hired as an employee of HFS Corp., on September

9, 2009. The parties dispute when the management team for the

Roosevelt Subway restaurant was changed, but agree that Victoria

de la Rosa was introduced as the Assistant Supervisor. Viviana

Candelario was and still is the Director of Human Resources at

HFS Corp. Omayra Garcia was and still is the Supervisor of HFS

Corp. Jack Henry was and still is the president of HFS Corp.

Rivera successfully completed the employee probationary period

at HFS Corp. Rivera was assigned to work under the supervision

of Victoria de la Rosa. The parties dispute when Victoria de la

Rosa and Rivera commenced working together. However the record

reflects that it was either on January 31, 2010 or February 2,

2011.

---

[1] The Court is aware of Defendants' pending motion requesting leave to withdraw or amend admissions. (Docket No. 79). The Court is appalled that Defendants would file a motion for summary judgment misrepresenting the admissions they have made to Rivera. The Court finds this kind of misrepresentation to be inexcusable and forewarns counsel that this will not be tolerated in the future. Moreover, the Court shall refer the motion to amend admissions to a Magistrate Judge. The Court further notes that its decision regarding the motion for summary judgment would not be affected by a grant or denial of the motion to withdraw or amend admissions.

Civil Case No. 11-1116 (JAG)                                                3

    Before February 3, 2010 Rivera never complained about
discrimination or sexual harassment. On February 3, 2010, Rivera
called Omayra Garcia and complained of her difficulties with
Victoria de la Rosa. On February 5, 2010, Rivera met with Omayra
Garcia and Viviana Candelario. During the meeting Rivera
complained that Victoria de la Rosa called her a "dirty dyke."
The parties disagree as to where the meeting was conducted as
Defendants state that the meeting took place in the office and
Rivera posits that the meeting was conducted in the back of the
Subway restaurant. Rivera also complained about Victoria de la
Rosa's behavior and stated that Victoria de la Rosa refused to
work with her or was not helpful to her. Rivera further
complained that Victoria de la Rosa made her stay after the end
of her shift. Rivera's shift ended at 10:00 PM and she had to
stay until 10:40 or 10:45 PM. According to Rivera, Victoria de
la Rosa told her that she was not going anywhere and when Rivera
inquired as to why, Victoria de la Rosa responded "because I say
so, because I feel like it." (Docket No. 78-1, p. 41). Rivera
also claims that during her meeting with Omayra Garcia and
Viviana Candelario, Victoria de la Rosa was making expressions
of mockery at her.

    After listening to Rivera's complaints, Omayra Garcia and
Viviana Candelario told Rivera that they needed to meet with
Victoria de la Rosa and Rivera left. The parties disagree as to

Civil Case No. 11-1116 (JAG)                                                    4

whether or not Omayra Garcia and Viviana Candelario told Rivera
that they would call her with a decision or simply told Rivera
that they would schedule another meeting. Rivera posits that she
exited the Subway restaurant and then decided to re-enter
because she was unsure when she had to return to work.

After meeting with Rivera, Omayra Garcia and Viviana
Candelario met with Victoria de la Rosa. Defendants allege that
at the beginning of the meeting with Victoria de la Rosa,
Cinthia Cortes, a former employee of HFS Corp., interrupted the
meeting and loudly insulted Victoria de la Rosa in an aggressive
tone. Defendants state that it was at this time that Rivera re-
entered the Subway. Rivera denies that Cinthia Cortes yelled at
Defendants. Rivera avers that it was Viviana Candelario who
started yelling at her when she re-entered the subway telling
her that she had to leave and that they were done with her.

Defendants aver that Rivera then left the premises and
resigned verbally. Rivera denies that she resigned. Defendants
also state that Cinthia Cortes and Rivera acted with hostility
towards Victoria de la Rosa and as a result Viviana Candelario
called the police. Rivera denies that she or Cinthia Cortes
acted with hostility. Rivera further qualifies that the police
report filed was against Cinthia Cortes.

Civil Case No. 11-1116 (JAG)                                          5

The parties disagree as to whether or not Rivera resigned.[2] Rivera claims that she did not show up to work again because Defendants threatened to call the police if she returned to work. Rivera further states that Defendants asked for her resignation on February 5, 2010, and she was terminated on that date. Defendants reject the notion that they requested Rivera's resignation, despite the fact they have already admitted to that. Rivera subsequently filed a discrimination charge with the EEOC on November 17, 2010.

**STANDARD**

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (internal citations omitted); Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (stating that an issue is genuine if it could be resolved in favor of either party); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986).

---

[2] The Court again notes that there exists a disagreement regarding Defendants' admissions. Defendants admitted that they asked for Rivera's resignation, however, they stated otherwise in their motion for summary judgment. Rather than resolve the issue here, the Court will refer this matter to a Magistrate Judge.

Civil Case No. 11-1116 (JAG)                                        6

In order for a disputed fact to be considered material it must

have the potential "to affect the outcome of the suit under

governing law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-661

(citing Liberty Lobby, Inc., 477 U.S. at 247-248); Prescott, 538

F.3d at 40 (citing Maymi v. P.R. Ports Auth., 515 F.3d 20, 25

(1st Cir. 2008)).

     The ethos of summary judgment is to "pierce the pleadings

and to assess the proof in order to see whether there is a

genuine need for trial." DeNovellis v. Shalala, 124 F.3d 298,

306 (1st Cir. 1997)(citing FED. R. CIV. P. 56 (e) advisory

committee note to the 1963 Amendment). The moving party must

demonstrate the absence of a genuine issue as to any outcome-

determinative fact on the record. Shalala, 124 F.3d at 306. Upon

a showing by the moving party of an absence of a genuine issue

of material fact, the burden shifts to the nonmoving party to

demonstrate that a trier of fact could reasonably find in his

favor. Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986)). The nonmovant may not defeat a "properly focused motion

for summary judgment by relying upon mere allegations," but

rather through definite and competent evidence. Maldonado-Denis

v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The

nonmovant's burden thus encompasses a showing of "at least one

fact issue which is both 'genuine' and 'material'." Garside v.

Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990); see also

Civil Case No. 11-1116 (JAG)                                              7

<u>Suarez v. Pueblo Int'l</u>, 229 F.3d 49, 53 (1st Cir. 2000) (stating

that a nonmovant may shut down a summary judgment motion only

upon a showing that a trial-worthy issue exists). As a result,

the mere existence of "some alleged factual dispute between the

parties will not affect an otherwise properly supported motion

for summary judgment." <u>Liberty Lobby</u>, Inc., 477 U.S. at 247-248.

Similarly, "summary judgment may be appropriate if the nonmoving

party rests merely upon conclusory allegations, improbable

inferences, and unsupported speculation." <u>Medina-Muñoz v. R.J.</u>

<u>Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

When considering a motion for summary judgment, the Court

must examine the facts in the light most favorable to the

nonmoving party and draw all reasonable inferences in its favor

in order to conclude whether or not there is sufficient evidence

in favor of the nonmovant for a jury to return a verdict in its

favor. <u>Rochester Ford Sales, Inc. v. Ford Motor Co.</u>, 287 F.3d

32, 38 (1st Cir. 2002). The Court must review the record as a

whole and refrain from engaging in an assessment of credibility

or weigh the evidence presented. <u>Reeves v. Sanderson Plumbing</u>

<u>Products, Inc.</u>, 530 U.S. 133, 135 (2000)(internal citations

omitted). The burden placed upon the nonmovant is one of

production rather than persuasion. In other words, in weighing a

nonmovant's opposition to summary judgment the Court should not

Civil Case No. 11-1116 (JAG)                                        8

engage in jury-like functions related to the determination of

credibility.

**ANALYSIS**

**A. Discrimination**

Title VII does not proscribe harassment simply because of

sexual orientation. Higgins v. New Balance Athletic Shoe, Inc.,

194 F.3d 252, 259 (1st Cir. 1999). Title VII prohibits employers

from discriminating against an individual with respect to his

employment "because of such individual's race, color, religion,

sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The

statutory 'because of . . . sex' requirement is not met merely

because workplace harassment involves sexual matters: the

substance of the violation is discrimination based on sex . . ."

Higgins, 194 F.3d at 258. Thus, the critical issue in Title VII

cases is whether members of one sex are exposed to

disadvantageous terms or conditions to which members of the

other sex are not exposed. Ayala-Sepulveda v. Municipality of

San German, 661 F. Supp. 2d 130, 139 (D.P.R. 2009)(citing Oncale

v. Sundowner Offshore Servs., 523 U.S. 75, 80 (1998)).

Plaintiffs must allege that the discrimination took place

because of his/her sex.

Rivera states in her complaint that she was discriminated

against because of her sex. More specifically, Rivera claims

that she suffered a hostile work environment because her

Civil Case No. 11-1116 (JAG)                                        9

behavior did not conform to the stereotype of a female. Thus,
Rivera advances a claim of sex stereotyping pursuant to Price
Waterhouse v. Hopkins, 490 U.S. 228, 250-52 (1989). In Price
Waterhouse, the Supreme Court stated that an individual who
suffered an adverse employment consequence because she did not
match the social stereotypes associated with her protected group
had an actionable claim under Title VII. "[J]ust as a woman can
ground an action on a claim that men discriminated against her
because she did not meet stereotyped expectations of femininity,
a man can ground a claim on evidence that other men
discriminated against him because he did not meet stereotyped
expectations of masculinity." Id. at 261 n. 4.

Rivera's allegation of discrimination hinges upon her claim
that she suffered an adverse employment action as a result of
her employer's animus toward her exhibition of behavior
considered to be stereotypically inappropriate for her gender.
However, Rivera fails to bring forth any examples of behavior
that her employer or supervisor found to be stereotypically
inappropriate. Rivera's only claim is that she was called a
"dirty dyke." Although this is undoubtedly an ugly and
unnecessary insult, there is no showing that the alleged animus
was premised on actual behavior. The Court agrees with other
courts that gender stereotyping claims should not be used to
bootstrap protection for sexual orientation into Title VII.

Civil Case No. 11-1116 (JAG)                                    10

Dawson v. Bumble & Bumble, 398 F.3d 211, 218 (2d Cir. 2005)(citing Simonton v. Runyon, 232 F.3d 33, 35 (2d Cir.2000)); cf. Heller v. Columbia Edgewater Country Club, 195 F.Supp.2d 1212, 1224 (D.Or. 2002) (lesbian plaintiff stated a Title VII claim by alleging discrimination based upon her failure to conform to supervisor's "stereotype of how a woman ought to behave. Heller is attracted to and dates other women, whereas Cagle believes that a woman should be attracted to and date only men.").

Thus, taking the facts in the light most favorable to Rivera, the Court is unable to conclude that she suffered discrimination because she did not meet stereotyped expectations of femininity. The complaint limits itself to stating that she was called a "dirty dyke" and that this evinces that her employers did not approve of her failure to meet their expectations of femininity. Such a claim is insufficient. Furthermore, the Court does not have sufficient allegations to conclude that Rivera's claims are based on stereotyping because there is no basis in the record to surmise that Rivera behaved in a manner that was not stereotypically feminine. In fact, Rivera cites as evidence of sex stereotyping that Victoria de la Rosa called her a "dirty dyke," refused to assist her at work, was aggressive in her tone, forced her to complete all the daily tasks by herself, and being forced to stay at work for 45

Civil Case No. 11-1116 (JAG)                                          11

minutes after the completion of her shift. None of these examples in any way suggest that Rivera suffered discrimination that was the result of her failure to conform to female stereotypes. As a result, the Court finds that Rivera's claim of gender stereotyping is exclusively premised on a comment relating to sexual orientation, which the Court concludes is insufficient in order for her claim to succeed.

As a result of the foregoing, the Court **GRANTS** Defendants' request that Rivera's discrimination claim be dismissed.

### B. Retaliation

A plaintiff establishes a *prima facie* case of retaliation by showing that (1) he engaged in protected conduct under Title VII; (2) he experienced an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse employment action. White v. N.H. Dep't of Corr., 221 F.3d 254, 262 (1st Cir. 2000). Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to demonstrate that there was a non-discriminatory reason for the adverse employment action. Douglas v. J.C. Penney Co., Inc., 474 F.3d 10, 14 (1st Cir. 2007). If the employer demonstrates such a reason, the burden returns to the plaintiff to show that the non-discriminatory reason was merely a pretext for discrimination. Id.

Civil Case No. 11-1116 (JAG)                                          12

     To establish the first of these elements - participation in
a protected activity - plaintiff need not prove that the
conditions against which she protested actually amounted to a
violation of Title VII. Fantini v. Salem State College,557 F.3d
22, 32 (1st Cir. 2009)(citing Wimmer v. Suffolk County Police
Dep't, 176 F.3d 125, 134 (2d Cir.1999), *cert. denied*, 528 U.S.
964(1999))(citations omitted). The plaintiff must demonstrate
only that she had a good faith, reasonable belief that the
underlying challenged actions of the employer violated the law.
Id. Protected activity refers to action taken to protest or
oppose statutorily prohibited discrimination. Id. (citing Cruz
v. Coach Stores Inc., 202 F.3d 560, 566 (2d Cir. 2000)).

     Rivera advanced a retaliation claim pursuant to Title VII.
Defendants posit that Rivera's retaliation claim should be
dismissed because Rivera cannot show the causal relationship
between her reporting of discrimination and the subsequent
discharge. See Hoeppner v. Crotched Mountain Rehabilitation
Center, Inc., 31 F.3d 9, 14 (1st Cir. 1994). Rivera has provided
the Court with a number of specific facts that includes names,
dates, and incidents regarding what transpired on the date on
which she was fired or she resigned.

     The Court must determine whether or not there is a genuine
issue of material fact regarding the existence of a causal
connection between Rivera's complaint and her subsequent

Civil Case No. 11-1116 (JAG)                                      13

discharge. An issue is genuine if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.

The Court must make all reasonable inferences favorable to the

nonmoving party, but the nonmoving party may not rest upon mere

allegations and must set forth specific facts demonstrating a

genuine issue for trial. Id. (citing Liberty Lobby, 477 U.S. at

248). In discriminatory discharge cases the nonmovant must point

to specific facts detailed in affidavits and depositions that

give rise to an inference of discriminatory animus. Id. (citing

Lipsett v. University of Puerto Rico, 864 F.2d 881, 895 (1st

Cir.1988)). Moreover, very close temporal proximity between

protected activity and adverse employment action can satisfy a

plaintiff's burden of showing a causal connection. Sanchez-

Rodriguez v. AT & T Mobility Puerto Rico, Inc., 673 F.3d 1, 14

(1st Cir. 2012)(citing Calero-Cerezo v. U.S. Dep't. of Justice,

355 F.3d 6, 25 (1st Cir. 2004)).

     The Court understands that Rivera has demonstrated by a

preponderance of the evidence that she engaged in a protected

activity, she was subsequently discharged, and that that there

was a causal connection between the protected activity and the

discharge. In contrast, the evidence does not show, as

Defendants posit, that Rivera resigned, that the incident

occurred due to Rivera's hostile behavior when she re-entered

the Subway restaurant, and that Rivera's alleged hostile

Civil Case No. 11-1116 (JAG)                                       14

behavior was the cause for her decision to resign. Moreover,

Rivera has in fact provided names, dates, incidents, and her own

supporting testimony. In light of the applicable caselaw, Rivera

has advanced a *prima facie* case of retaliation.

Thus, in light of the foregoing Defendants motion for

summary judgment as to the retaliation claim is **DENIED.**

The Court has concluded that Rivera's retaliation claim

shall proceed. However, the Court notes that there is no

individual liability under Title VII. The First Circuit has

determined that employees are not individually liable under

Title VII for engaging in proscribed discriminatory acts. Rey-

Cruz v. Forensic Science Institute, 794 F.Supp.2d 329, 334

(D.P.R. 2011)(citing Fantini v. Salem State Coll., 557 F.3d 22,

28-31 (1st Cir. 2009). However, the parties have not properly

briefed whether or not these employees are subject to liability

pursuant to Puerto Rico state law. See Act 69 of July 6, 1985,

29 L.P.R.A. § 1321 *et. seq*. Therefore, the Court understands

that it is proper to retain jurisdiction over all named

Defendants.

**C. Supplemental jurisdiction**

Rivera has advanced a number of state law claims.

Defendants posit that the Court must decline supplemental

jurisdiction over the state law claims because the federal

claims should be dismissed. See Marrero-Gutiérrez v. Molina, 491

Civil Case No. 11-1116 (JAG)                                              15

F.3d 1, 7-8 (1st Cir.2007). However, the Court has not found

summary judgment to be proper as to Rivera's retaliation claim.

As a result, the Court finds no need to decline jurisdiction at

this juncture.

    As a result, the Court **DENIES** Defendants request that

supplemental jurisdiction be declined.

### CONCLUSION

    For the reasons outlined above, Defendants' motion for

summary judgment is **GRANTED IN PART AND DENIED IN PART**. The

Court dismisses Rivera's discrimination claim, however, Rivera's

Title VII retaliation claim and Puerto Rico state law claims

remain.


**IT IS SO ORDERED.**


In San Juan, Puerto Rico, this 12th day of June, 2012.


                                    S/ Jay A. Garcia-Gregory
                                    JAY A. GARCIA-GREGORY
                                    United States District Judge